PD-1467&1468-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/16/2015 10:56:59 AM
Accepted 12/18/2015 11:55:07 AM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-1467-15
## PD-1468-15

*Cole Canyon Lockhart, Appellant*

*v.*

*The State of Texas, Appellee*

**On Discretionary Review from
No.'s 13-13-00607-CR & 13-13-00608-CR
Thirteenth Court of Appeals, Corpus Christi-Edinburg**

**Appeals from No.'s CR-6577 & CR-6612
424th Judicial District Court, Llano County**

## PETITION FOR DISCRETIONARY REVIEW

**Tracy D. Cluck**
**Texas Bar No. 00787254**
**12600 Hill Country Blvd., Ste. R-275**
**Austin, Texas 78738**
**Phone: 512-329-2615**
**Fax:    512-329-2604**
**tracy@tracyclucklawyer.com**
**Attorney for Appellant**

*ORAL ARGUMENT REQUESTED*

## I.     Identity of Parties, Counsel and Judges

**Cole Canyon Lockhart, Appellant**

**Tracy D. Cluck, Attorney for Appellant at trial, on appeal, and on discretionary review**, 12600 Hill Country Blvd., Ste. R-275, Austin, Texas 78738, phone: 512-329-2615, fax: 512-329-2694, email: tracy@tracyclucklawyer.com.

**State of Texas, Appellee**

**Wiley B. "Sonny" McAfee, 33rd & 424th Judicial District Attorney, attorney for State of Texas**, P. O. Box 725, Llano, Texas 78643, phone: 325-247-5755, fax: 325-247-5274.

**Gary W. Bunyard, 33rd & 424th Judicial Assistant District Attorney, attorney for State of Texas**, P. O. Box 725, Llano, Texas 78643, phone: 325-247-5755, fax: 325-247-5274, email: g.bunyard@co.llano.tx.us.

**Judges**

**Hon. J. Allan Garrett, Presiding Judge of the 33rd Judicial District Court (suppression hearing)**, 1701 E. Polk St., Suite 74, Burnet, Texas 78611, phone: 512-756-5436, fax: 512-756-8478.

**Hon. Dan Mills, Presiding Judge of the 424th Judicial District Court (trial)**, 1701 E. Polk St., Suite 74, Burnet, Texas 78611, phone: 512-756-5436, fax: 512-756-8478.

**Justices Rogelio Valdez (Chief Justice), Gina M. Benevides, and Gregory T. Perkes**, Thirteenth Court of Appeals, 901 Leopard, 10th Floor, Corpus Christi, Texas 78401, phone: 361-888-0416, fax: 361-888-0794.

## II. Table of Contents

I. Identity of Parties, Counsel, and Judges ................................................2

II. Table of Contents ................................................................3

III. Table of Authorities ..............................................................4

IV. Appendix Index ...................................................................5

V. Statement Regarding Oral Argument ................................................5

VI. Statement of the Case and Procedural History .....................................6

VII. Grounds for Review ..............................................................7

VIII. Argument .......................................................................9

    1. The panel erred by concluding that the search of the containers located within the curtilage of the trailer where the contraband and gun were found was an objectively reasonable search and therefore the trial court properly overruled Appellant's motion to suppress evidence......................9

    2. The panel erred by concluding that the trial court properly denied Appellant's request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure...................................................11

    3. The panel erred by concluding that there was sufficient evidence to affirmatively link Appellant to the illegal drugs, which are the basis of his conviction...................................................13

4. The panel erred by failing to address the properly raised and briefed point of error of sufficiency of the evidence to support Appellant's conviction for Felon in Possession of a Firearm.............................................14

IX. Conclusion and Prayer .................................................................15

X. Certificate of Service ...................................................................16

XI. Certificate of Compliance with Tex. Rule App. Proc. 9.4 ...........................16

### III. Table of Authorities

**Cases**

*Atkinson v. State*, 923 S.W.2d 21,23 (Tex.Crim.App. 1996)......................12

*Davis v. State*, 817 S.W.2d 345,346 (Tex.Crim.App. 1991)........................9

*Florida v. Jardines.* ___ U.S. ___, 133 S.Ct. 1409 (2013)................7,9,10,11

*Foster v. State*, 635 S.W.2d 710 (Tex.Crim.App. 1982).........................15

*Garrett v. State*, 220 S.W.3d 926,928-29 (Tex.Crim.App. 2007)................9

*Garza v. State*, 715 S.W.2d 642 (Tex.Crim.App. 1986)........................15

*Keehn v. State*, 223 S.W.3d 348, 349 (Tex.Crim.App. 2007)...................14

*Lassaint v. State*, 79 S.W.3d 736, 740
(Tex.App.—Corpus Christi 2002, no pet.)...........................8,13,14

*Light v. State*, 15 S.W.3d 104 (Tex.Crim.App. 2000)........................8,9,15

*Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007)................12

*McFarland v. State*, 930 S.W.2d 99 (Tex.Crim.App. 1996)...................15

*Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993)..................12

**Rules & Statutes**

Tex. Code Crim. Pro. art. 38.23...........................................6,8,11,12

Tex. R. App. Pro. 41.1...........................................................8

Tex. R. App. Pro. 47.1........................................................8,14

Tex. R. App. Pro. 68.4(c).......................................................5

Tex. Penal Code §46.04........................................................6

Tex. Health & Safety Code §481.115(b)........................................6

**IV. Appendix Index**

Appendix 1: *Lockhart v. State*, 13-13-00607-CR & 13-13-00608-CR, (Tex.App.—Corpus Christi-Edinburg, September 17, 2015)(unpublished panel opinion).

Appendix 2: Brief of Appellant Cole Canyon Lockhart, Cole Canyon Lockhart v. State of Texas, No. 13-13-00607-CR, filed 7/14/2014.

**V. Statement Regarding Oral Argument**

Appellee requests oral argument. See Tex. Rule App. Proc. 68.4(c) (2015)

## VI. Statement of the Case and Procedural History

This petition for discretionary review requests that this Court review the judgment and opinion of the Thirteenth Court of Appeals in *Lockhart v. State*, 13-13-00607-CR & 13-13-00608-CR (Tex. App. Corpus Christi-Edinburg, September 17, 2015)(unpublished panel opinion)(See Appendix 1).

The procedural history of this case is as follows: Appellant was charged in separate cause numbers with Possession of a Controlled Substance (trial court no. CR-6612; COA No. 13-13-00608-CR) and Unlawful Possession of a Firearm by a Felon (trial court no. CR-6577; COA No. 13-13-00607-CR). Tex. Health & Safety Code §481.115(b); Tex. Pen. Code §46.04. Both charges arose from the same criminal episode and were tried in a single jury trial. The trial court denied Appellant's motion to suppress evidence before the trial. Appellant was convicted in both causes by the jury. Appellant appealed to the Third Court of Appeals in Austin and the case was transferred to the Thirteenth Court of Appeals in Corpus Christi-Edinburg. Appellant raised and briefed the following points of error (phrased another way): Did the trial court err by denying Appellant's motion to suppress evidence?; Did the trial court err by denying Appellant's request for a jury instruction under Art. 38.23 of the Texas Code of Criminal Procedure?; Was

the evidence admitted at trial insufficient to sustain a conviction for Possession of a Controlled Substance (13-13-00608-CR only); and, Was the evidence admitted at trial insufficient to sustain a conviction for Unlawful Possession of a Firearm by a Felon (13-13-00607-CR only). In a single, unpublished panel opinion addressing both appellate causes, the Thirteenth Court of Appeals discussed and overruled Appellants three points of error he asserts in that arise from his conviction for Possession of a Controlled Substance. However, the opinion did not acknowledge, address or discuss the sufficiency of the evidence point of error asserted and briefed by Appellant in his appeal of the conviction for Unlawful Possession of a Firearm by a Felon. Appellant timely filed a motion for rehearing and reconsideration *en banc*, which was overruled by the Thirteenth Court of Appeals on October 15, 2015. This petition follows.

## VII. Grounds for Review

Appellant contends that the panel did not properly apply *Florida v. Jardines* to the facts of the instant case. ___ U.S. ___, 133 S.Ct. 1409 (2013). The panel improperly concluded that the search of the curtilage surrounding the trailer where the contraband, which forms the basis of the charges against Appellant, was objectively reasonable and therefore the trial court properly denied Appellant's motion to suppress evidence.

Appellant further contends that the panel improperly concluded that the trial court did not err by denying Appellant's requested jury instruction under Art. 38.23 of the Texas Code of Criminal Procedure. The panel, acknowledging that controverting evidence was affirmatively placed before the jury by Appellant, which would entitle Appellant to the requested jury instruction, appears to make a factual determination regarding the relative persuasiveness of that evidence. This is precisely the determination by the jury that Appellant was entitled to.

Appellant further contends that the panel improperly concluded that there was sufficient evidence to affirmatively link him to the illegal drugs which form the basis of his conviction. When, as here, the accused does not have exclusive possession of the premises where drugs are found, there must be independent facts that affirmatively link the accused to those drugs. *Lassaint v. State*, 79 S.W.3d 736, 740 (Tex.App.—Corpus Christi 2002, no pet.). There are no such facts in the record and therefore the panel erred.

Appellant further contends that the panel erred by failing to acknowledge, address, discuss, and rule on a properly raised and briefed point of error: Whether the evidence adduced at trial was sufficient to sustain a conviction for Unlawful Possession of a Firearm by a Felon. "The courts of appeals are required to review

verey argument raised by a party that is necessary to the disposition of that appeal." *Light v. State*, 15 S.W.3d 104,105 (Tex.Crim.App. 2000). *See also* Tex.R.App.Pro. 41.1 and 47.1; *Davis v. State*, 817 S.W.2d 345,346 (Tex.Crim.App. 1991); and, *Garrett v. State*, 220 S.W.3d 926,928-29 (Tex.Crim.App. 2007). The issue was properly raised and briefed on direct appeal by Appellant and the panel erred by not acknowledging, addressing, discussing or ruling on this issue necessary for the disposition of the appeal. *See* Appendix 2.

## VIII. Argument

1. The panel erred by concluding that the search of the containers located within the curtilage of the trailer where the contraband and gun were found was an objectively reasonable search and therefore the trial court properly overruled Appellant's motion to suppress evidence. The panel concluded that the police went to the trailer where the drugs and gun were found, which form the basis of Appellant's convictions, to simply talk to Appellant which, the panel argues, is an allowable knock and talk under *Florida v. Jardines*. ___ U.S. ___, 133 S.Ct. 1409 (2013). However, in the case at bar the police went to the trailer in question to conduct a criminal investigation specifically regarding whether Appellant was manufacturing illegal drugs in the trailer at issue. Reporter's Record Vol. 6, pp. 12-13. Before arriving at the location the police discussed their belief that they would need to conduct a search and asked a K-9 officer to meet them at the trailer. *Id.* Upon arriving they detected an odor of chemicals they associated with illegal

drug production while standing at the curb. Reporter's Record Vol. 3, p. 77. They also knew, before they circled the trailer with a drug-sniffing dog and rummaged through a trash container and its contents located within the curtilage, that Appellant was not in the trailer and did not consent to a search. Reporter's Record Vol. 3, pp. 79-83. The police then used the fruits of this search to obtain a search warrant for the trailer where they found the drugs and gun, which form the basis of Appellant's convictions. *Id.* at 84.

The proper analysis under *Jardines* is not what the police had in their mind when they left the station, but rather what their subjective intent was when the entered the curtilage[1]. *Jardines*, 133 S.Ct. at 1416-17. Here, without consent or a warrant, they entered the curtilage with a drug-sniffing dog, rummaged through closed containers within the curtilage, and used the fruits of that search to obtain a search warrant after they smelled what they believed was evidence of illegal drug production and at a time when they knew that Appellant was not in the trailer. It is not objectively reasonable to infer that the purpose of the entry into the curtilage of the trailer in question was for a reason other than the search that was conducted without a warrant or consent. And even if police had another reason such as knock and talk, it is of no moment since conducting a search is what they did. *Jardines* is

---

[1] Even if the panel is correct that the police were merely conducting an allowable knock and talk, it is clear that police exceeded the implied limited license to do so by walking around the trailer with a drug-sniffing dog and rummaging the contents of a trash barrel located within the curtilage, and closed containers therein, without a warrant or explicit consent. The scope of any such license, whether express or implied, is limited to purpose and area. *Florida v. Jardines,* ___ U.S. ___, 133 S.Ct. 1409, 1416 (2013). The search warrant obtained with this tainted evidence is fruit of the poisonous tree. *Id.* Therefore, the trial court erred by denying Appellant's motion to suppress evidence.

directly on point. *Id.* If the panel's reasoning is correct, then police are free to conduct full scale searches of private property and rummage through whatever they find there at will without warrant or consent, so long as they have the concurrent purpose to talk to the occupants. This is clearly not the law as set out by the United States Supreme Court in *Jardines*. *Id.* The panel should have concluded that that the search was not objectively reasonable under the 4th Amendment to the United States Constitution and therefore the trial court should have granted Appellant's motion to suppress evidence. *Id.*

2.    The panel erred by concluding that the trial court properly denied Appellant's request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure. The panel examines the record and notes that while Appellant introduced evidence that the police trespassed onto the property where the trailer in question is located[2], the state controverted this evidence with testimony by a police officer that while there is in fact a "No Trespassing" sign at the entrance of the property he did not believe it was intended to apply to him[3]. Moreover, the police officer testified that he was aware of the "No Trespassing" sign and did not have permission or consent to enter the private property and did not have a search warrant[4].

---

[2] Appellant introduced a photograph of "No Trespassing" signs posted at the entrance to the fishing camp where the trailer in question is located. Reporter's Record Vol. 6, p. 75.

[3] Reporter's Record, Vol. 3, pp. 79-80.

[4] Reporter's Record, Vol. 3, pp. 76-77, 80.

Here the record is clear that Appellant affirmatively contested, by introduction of controverting evidence and by cross-examination of state's witnesses, the state's evidence that the police lawfully entered into the fishing camp where the trailer was located. However, the panel appears to make a factual determination that the state's evidence is more persuasive on this issue and thus Appellant was not entitled to a jury instruction on this issue. Panel Opinion at 9. By doing so, the panel has substituted its judgment about the evidence for that of the jury. This is precisely why Appellant is entitled to a jury instruction on this issue as mandated by Article 38.23 of the Texas Code of Criminal Procedure.

The proper inquiry for the court of appeals is not whether the testimony elicited on this issue by the state is more persuasive than the evidence introduced by Appellant, or whether there is evidence in the record from which the trial court could have concluded that the police conduct was lawful, but rather was there conflicting evidence on this issue before the jury[5]. Since the record shows that there was in fact conflicting evidence on this issue before the jury, Appellant is entitled to a jury instruction on this issue as he requested. Here the record is clear that the jury had disputed evidence before it on this issue and that Appellant affirmatively introduced evidence on this issue disputing the state's evidence. The legality of the search of the trailer is clearly material since it relates to the

---

[5] Article 38.23, Texas Code of Criminal Procedure; *Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007); *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993); *Atkinson v. State*, 923 S.W.2d 21, 23 (Tex.Crim.App. 1996).

lawfulness of police conduct in obtaining the evidence, which forms the gravamen of the offenses for which Appellant was tried. Therefore, Appellant was entitled to a jury instruction on this disputed issue of material fact as requested. The panel erred in concluding that there was no genuine dispute about a material fact challenging the legality of the entrance into the fishing camp by police without a warrant. Appellant's second issue should have been sustained.

3.     The panel erred by concluding that there was sufficient evidence to affirmatively link Appellant to the illegal drugs, which form the basis of his conviction. The panel notes that the record shows that the Appellant was generally connected to illegal drugs by a named, cooperating individual[6], and that Appellant was connected to the location where the contraband was later found. However, the panel does not note, and the record does not show, that Appellant is affirmatively linked to the particular drugs which form the basis of his conviction. Moreover, as the panel notes, Appellant did not have exclusive possession of the premises where the contraband was found. Panel Opinion at 12. The state must introduce evidence that Appellant is affirmatively linked to the drugs which he is accused of possessing in such a manner to show that he knew of the existence of the drugs *and* that he exercised actual care, custody or control over it. *Lassaint v. State*, 79 S.W.3d 736, 740 (Tex.App.—Corpus Christi 2002, no pet.)(emphasis added). Here the panel argues that there was evidence from which an inference could be drawn that Appellant knew of the existence of drugs generally in the trailer, but not

---

[6] The record does not reflect that this hearsay statement testified to by Deputy Burke was made for the truth of the matter asserted.

that there is evidence in the record from which a rational trier of fact could conclude beyond a reasonable doubt that Appellant exercised actual care, custody or control over the specific drugs which form the basis of the charges against him as the law requires. *See id.*

When as here, the accused does not have exclusive possession of the premises where drugs are found, there must be independent facts that affirmatively link the accused to those particular drugs. *Id.* at 740. There are no facts in the record that show that Appellant exercised actual care, custody or control over the specific drugs he is accused of possessing. Therefore, the panel erred in concluding that the evidence at trial was sufficient to establish the necessary affirmative link between Appellant and the contraband he was convicted of possessing.

4. The panel failed to address the properly raised and briefed issue of sufficiency of the evidence to support Appellant's conviction for Felon in Possession of a Firearm. Appellant properly raised and briefed the issue of whether the evidence admitted at trial is insufficient to sustain a conviction for unlawful possession of a firearm by a felon[7]. However, the panel opinion makes no mention of this point of error. The court of appeals must "address every issue raised and necessary to final disposition of the appeal." Tex.R.App.Pro. 47.1; *Keehn v. State*, 223 S.W.3d 348, 349 (Tex.Crim.App. 2007). Each point of error

---

[7] Appellant's Brief, No. 13-13-607-CR, filed 7/14/2015, pp. 32-47 (Appendix 2).

should be addressed by the court of appeals separately, clearly indicating the reason for the outcome of the case. *See Light v. State*, 15 S.W.3d 104 (Tex.Crim.App. 2000). When an Appellant raises the issue of legal sufficiency of the evidence, the court of appeals must always address this issue even if the conviction can be reversed on other grounds since a finding that the evidence is legally insufficient to support a conviction prevents retrial. *See Garza v. State*, 715 S.W.2d 642 (Tex.Crim.App. 1986); *Foster v. State*, 635 S.W.2d 710 (Tex.Crim.App. 1982); *McFarland v. State*, 930 S.W.2d 99 (Tex.Crim.App. 1996). The panel erred by not addressing the properly raised and briefed issue of the legal sufficiency of the evidence at trial to support a conviction for possession of a firearm by a felon.

## IX. Conclusion and Prayer

For the reasons stated in this petition, Appellant respectfully prays that this Court grant discretionary review, reverse the judgment and opinion of the Thirteenth Court of Appeals, and order the court of appeals to review Appellant's properly briefed point of error regarding the sufficiency of the evidence to sustain a conviction for Unlawful Possession of a Firearm by a Felon.

Respectfully submitted,

TRACY D. CLUCK

Texas Bar No. 00787254
12600 Hill Country Blvd., Ste. R-275
Austin, Texas 78738
Phone:      512-329-2615
Fax:        512-329-2604
tracy@tracyclucklawyer.com

## X. Certificate of Service

This certifies that on December 16, 2015, a copy of this document was served on Gary W. Bunyard, Assistant District Attorney, 33rd & 424th Judicial District Attorneys Office, P. O. Box 725, Llano, Texas 78643, g.bunyard@co.llano.tx.us. See Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015).

Tracy D. Cluck

## XI. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 4,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains approximately 3,432 words in the document except in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented (grounds for review section), statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies

with the typeface requirements because it has been prepared in a proportionally spaced typeface using 14-point font. See Tex. Rule App. Proc. 9.4 (2015).

Tracy D. Cluck

# APPENDIX 1



# NUMBERS 13-13-00607-CR and 13-13-00608-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **COLE CANYON LOCKHART,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 424th District Court
### of Llano County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Perkes
### Memorandum Opinion by Justice Benavides

By three issues on appeal, appellant Cole Lockhart asserts that (1) the trial court erred in denying his motion to suppress evidence obtained from a search warrant; (2) the trial court erred in denying his request for a jury instruction under article 38.23 of the Texas Code of Criminal Procedure; and (3) the evidence is insufficient to sustain his

conviction for possession of methamphetamines.   We affirm.

## I.   BACKGROUND[1]

On April 5, 2012, Sheriff Bill Blackburn received a tip that an individual by the name of Allen Stone had purchased methamphetamines from Lockhart, and Stone subsequently died.   Acting on a tip, Llano County Sheriff Investigator Mark Burke, Deputy John Gillespie along with his canine partner Chack, Lieutenant Brad Evans, and Sheriff Bill Blackburn approached a travel trailer occupied by Lockhart located on the premises of Long's Fishing Camp[2] in Llano County.   The record shows that Sheriff Blackburn had previously spoken to Lockhart over the telephone regarding the investigation.

Investigator Burke testified that upon arriving at the travel trailer, his eyes, nose, and throat began to burn from an "ammonia" or "cat-urine type odor," and that based upon his training as a narcotics investigator, such a smell is "normally associated" with the manufacture of methamphetamines. Deputy Gillespie also experienced a similar reaction. Deputy Gillespie's canine, Chack, performed a "free air sniff" of the exterior front door of the travel trailer, and Chack alerted Deputy Gillepsie of a positive alert of narcotics.

Lockhart spoke with the sheriff's investigators outside of the trailer.   The Investigators asked Lockhart for his consent to search the travel trailer, but Lockhart refused.   After Lockhart refused, Investigator Burke inspected a 55-gallon drum

---

[1] This appeal was transferred from the Third Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court.   See TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46, 2015 R.S.).

[2] Long's Fishing Camp was described as a "recreation area that's frequented by lots of people from lots of different areas."

trashcan located in the front of the travel trailer. Inside of the trashcan, Investigator Burke found: (1) an empty container of Good Sense Iodine, which he testified is used in the manufacture of drugs; (2) coffee filters, which he testified is used in the manufacture of drugs to "filter substances out from other substances"; and (3) Wal-Finate, a cold tablet which contains pseudoephedrine, a common ingredient used in the manufacture of drugs. Investigator Burke testified that the iodine, coffee filters, and cold tablets were found together inside of a discarded Chicken Express bag located inside of the trashcan.

Using the information gathered at the scene, Investigator Burke subsequently applied for and received a warrant to search the travel trailer. After executing the search warrant on the travel trailer, investigators found, among other things: (1) a Marlin .22-caliber rifle; (2) a tool bag with chemicals in it; (3) glass pipes typically used for smoking methamphetamines; and (3) a substance weighing 0.27 grams that tested positive for methamphetamines.

The State indicted Lockhart for: (1) unlawful possession of a firearm by a felon, a third-degree felony, see TEX. PENAL CODE ANN. § 46.04 (West, Westlaw through Ch. 46, 2015 R.S.), enhanced by a prior felony conviction[3], see id. § 12.42(a) (West, Westlaw through Ch. 46, 2015 R.S.); and (2) possession of methamphetamine, a substance listed in Penalty Group 1, in an amount of less than one gram, a state-jail felony. See TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West, Westlaw through Ch. 46, 2015 R.S.). Lockhart pleaded not guilty and was tried before a jury on guilt-innocence, as well as on punishment. The jury found Lockhart guilty as charged for both offenses[4] and assessed

---

[3] At trial, Lockhart stipulated to his prior conviction for manufacture of a controlled substance, a first-degree felony. See TEX. PENAL CODE ANN. § 481.112(a), (d) (West, Westlaw through Ch. 46, 2015 R.S.).

[4] Appellate cause number 13-13-00607-CR is assigned to the unlawful possession of a firearm

3

punishment at ten years and one day imprisonment with the Texas Department of Criminal Justice—Institutional Division (TDCJ-ID) for the unlawful possession of a firearm by a felon conviction and two years' confinement with TDCJ-ID for the possession of methamphetamine conviction, both sentences to run concurrently. This appeal followed.

## II.     MOTION TO SUPPRESS

By his first issue, Lockhart contends that the trial court erred by denying his motion to suppress the evidence seized from the travel trailer.

### A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. *Johnson*, 414 S.W.3d at 192. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

### B. Discussion

Lockhart bases his suppression argument solely on the grounds that the sheriff's

---

conviction, and appellate cause number 13-13-00608-CR is assigned to the possession of methamphetamine conviction.

4

investigators conducted an unlawful search upon his property prior to obtaining the warrant. Relying heavily on *Florida v. Jardines*, 133 S.Ct. 1409 (2013), Lockhart argues that the sheriff's investigators entered his property with the intent to search his premises in violation of the Fourth Amendment. *See id.* at 1417. Stated another way, the question before us is whether the sheriff's investigators' conduct in this case was an objectively reasonable search. The answer to this question depends upon whether the officers had an implied license to enter the area outside of Lockhart's travel trailer, which in turn depends upon the purpose for which they entered. *See id.* As noted in *Jardines*, "a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." *Id.* at 1416 (citing *Kentucky v. King*, 131 S.Ct. 1849, 1862 (2011)) (internal quotation).

In this case, the trial court's findings of fact shed some light on this inquiry. The trial court made the following relevant findings:

2. 'On April 5, 2012, an individual named Amanda Robinson reported to Llano County Sheriff's Office that Cole Lockhart . . . [was] cooking methamphetamine at the subject property. Amanda Robinson reported that she witnessed her friend, Allen Stone, purchase methamphetamine from the Defendant and Amanda Meager at the subject property on April 4, 2012.

3. On April 5, 2012 [Lockhart] contacted Llano County Sheriff . . . Blackburn by telephone regarding the death of Allen Stone which had occurred on April 5, 2012.

4. On April 5, 2012, at 10:45 p.m., Llano County Sheriff . . . Blackburn, together with other deputies, went to the subject property to speak with [Lockhart]. On arrival, [Lockhart] was not present. Sheriff Blackburn contacted [Lockhart] by cell phone and asked [Lockhart] to return to the subject property to talk. [Lockhart] arrived at the subject property approximately 10 minutes later.

5. [Lockhart] spoke with Sheriff Blackburn about the death of Allen Stone and about how [Lockhart] knew of individuals that were

5

selling narcotics to Allen Stone.

6.  On arrival at the subject property at 11:30 p.m. Deputy John Gillespie detected a "cat urine" odor coming from the subject property causing his eyes, nose, and upper throat to burn slightly. Deputy Gillespie experienced the same symptoms and reaction on September 2, 2011, when deputies had located precursor chemicals and a finished batch of methamphetamine (later confirmed to contain methamphetamine by the DPS laboratory).

. . . .

10. When confronted with the information received by Amanda Robinson[,] [Lockhart] denied cooking or selling methamphetamine. At approximately 11:55 p.m. [Lockhart] declined to give consent to search the subject property stating that he did not occupy the travel trailer.

11. The owner of Long's Fish[ing] Camp and the travel trailer . . . told Sheriff Blackburn that [Lockhart] was the occupant of the travel trailer and had occupied the travel trailer for several days.

This record shows that Sheriff Blackburn and his deputies approached Lockhart's trailer with the purpose of investigating Stone's death and the dealing of drugs to Stone, and not to conduct a search of Lockhart's trailer. Upon his arrival at the trailer, Lockhart did not consent to the deputies' request to search the travel trailer, but did not ask the officers to leave either. Furthermore, Lockhart voluntarily spoke with Sheriff Blackburn about Stone's death and about individuals who may have sold drugs to Stone. Viewing this evidence in the light most favorable to the trial court's ruling, we conclude that the sheriff's investigators conducted an objectively reasonable search and did not enter Lockhart's property with the initial intent to search. Thus, the facts in this case are factually distinguishable from *Jardines*. Accordingly, the trial court did not err in denying Lockhart's motion to suppress. *See id.* at 1416–17. Lockhart's first issue is overruled.

6

## III. ARTICLE 38.23 INSTRUCTION

By his second issue, Lockhart asserts that the trial court reversibly erred by denying his request for a jury instruction under article 38.23 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through Ch. 46, 2015 R.S.).

### A. Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm. *Id.* Preservation of charge error does not become an issue until we assess harm. *Id.* (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).

In assessing harm we first examine whether the defendant objected to the erroneous charge. *Id.* If the defendant did not object, "then he must show that the error was 'fundamental' and that he suffered 'egregious harm.'" *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The appellant must show "actual, rather than theoretical, harm." *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Some examples of egregious harm include those errors that "affect the very basis of the case," "deprive the defendant of a valuable right, or vitally affect a defensive theory." *Id.* (internal quotations and citation omitted). This particular standard is a "high and difficult standard which must be borne out of by the trial record." *Reeves*, 420 S.W.3d at 816.

If, however, the defendant properly objected, then he will obtain relief if the record shows that he suffered "some harm." *Id.* This standard requires us to consider (1) the

7

jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors revealed by the record as a whole. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

## B. Applicable Law

A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). The terms of the statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. *Id.* at 510 (internal citation omitted). The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. *Id.* Where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Id.* (citing *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Crim.App.1982)). Before a defendant is entitled to an article 38.23 instruction, (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining evidence. *Id.*

Without a genuine dispute about a material fact, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id.* And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.* In other words, the disputed fact must be an essential one in deciding the lawfulness of the challenged conduct. *Id.*

8

## C.    Discussion

Here, Lockhart argues that disputed material facts existed at trial regarding whether access to Long's Fishing Camp by police was allowed despite a "No Trespassing" sign located on the front of the camp property.   We disagree.   There was no evidence that Lockhart owned the recreational fishing camp property that he alleges the sheriff's investigators trespassed on.   Furthermore, there is no disputed evidence to show that Lockhart sought to exclude the sheriff's investigators from his trailer or the fishing camp in general.   To the contrary, Lockhart engaged in conversation with Sheriff Blackburn near the travel trailer that he occupied without once asking Sheriff Blackburn or the other deputies to leave the premises.   Finally, the evidence is undisputed that Long's Fishing Camp is a "recreation area" that is frequented by the public who pay access fees to the property.   Deputy Burke testified that the "No Trespassing" sign was likely intended for individuals who wanted to fish on the camp without paying an access fee.

Based on the record, we agree with the trial court's conclusion that no genuine dispute about a material fact existed to challenge the legality of the sheriff's investigators' entrance onto Long's Fishing Camp, or the area around the trailer that Lockhart occupied. As a result, the trial court did not err in denying Lockhart's request for an article 38.23 jury instruction.   *See id.*   Because we find that no error exists, our analysis ends here.   *See Ngo*, 175 S.W.3d at 743.   Lockhart's second issue is overruled.

## IV.    SUFFICIENCY CHALLENGE

By his final issue, Lockhart asserts that the evidence is insufficient to sustain his conviction for possession of methamphetamines.

9

## A.    Standard of Review

In reviewing sufficiency of evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the fact-finder's credibility and weight determinations because the fact-finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768.

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the charging instrument, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Under a hypothetically correct jury charge, Lockhart is guilty of possession of methamphetamines if he knowingly or intentionally possessed methamphetamines in an amount of less than one gram. *See* TEX. HEALTH & SAFETY

10

CODE ANN. § 481.115(b).

## B.    Discussion

Lockhart solely challenges the sufficiency of the evidence to sustain his conviction on the element of unlawful possession on the ground that he was not affirmatively linked to the methamphetamines found in the travel trailer.   We disagree.

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.   *Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005).   Under the so-called "affirmative links" rule, whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id.* (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).   Thus, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.   *Id.* at 406 (internal citation and quotations omitted).

Courts have developed numerous non-exclusive factors to determine whether the evidence is sufficient to affirmatively link the accused to the controlled substance. These factors include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or had the right to possess the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused, or found on the same side of the vehicle as the accused was sitting; (5) the contraband was

11

found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to escape or flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.) (internal citations omitted). The number of factors is not as important as the logical force the factors have in establishing the elements of the offense. *Id.*

Here, Deputy Burke testified that a "named cooperating individual" had provided the Llano County sheriff's office with a tip that an individual who had died in the county the previous night had purchased methamphetamines from Lockhart. Tips such as this have been held to have sufficient probative value to establish an affirmative link between an accused and the contraband found in his home. *See Poindexter*, 153 S.W.3d at 409. Additionally, Deputy Burke further testified that Lockhart and Amanda Meager were the only individuals who had access to the trailer where the methamphetamines were found. *See Lassaint*, 79 S.W.3d at 740–41 (Factor Two). Once inside the trailer, sheriff's investigators found a duffle bag with an eyeglasses prescription issued to Lockhart, as well as parts to a chainsaw. The evidence also shows that Lockhart cut cedar trees for

12

landowners in the area. *See id.* (Factor Two). Furthermore, the evidence shows that the baggy of methamphetamines and a pipe used to smoke methamphetamines was seized from the "rafters" of the travel trailer. *See id.* (Factor One). Finally, Deputy Burke testified that a strong residual "cat urine" odor permeated the travel trailer, which indicated the manufacture of methamphetamines. *See id.* (Factor Six).

After considering all of the evidence in the light most favorable to the verdict, we determine that based on that evidence and reasonable inferences therefrom, a rational fact finder could have found that sufficient evidence affirmatively links Lockhart to the contraband to sustain his conviction for possession of methamphetamines. *See id.*; *see also Winfrey*, 393 S.W.3d at 768. We overrule Lockhart's third issue.

## V. Conclusion

We affirm the trial court's judgments.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
17th day of September, 2015.

13

# APPENDIX 2

No. 13-13-00607-CR

---

IN THE COURT OF APPEALS FOR THE
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI/EDINBURG

---

COLE CANYON LOCKHART,

Appellant

v.

THE STATE OF TEXAS,

Appellee

---

**BRIEF OF APPELLANT
COLE CANYON LOCKHART**

---

TRACY D. CLUCK
Texas Bar No. 00787254
1450 West Highway 290, #855
Dripping Springs, TX  78620
Telephone:  512-264-9997
E-Fax:        509-355-1867
tracy@tracyclucklawyer.com

ATTORNEY FOR APPELLANT
COLE CANYON LOCKHART

**<u>ORAL ARGUMENT REQUESTED</u>**

1

# IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to this appeal and the names and addresses of those parties' counsel:

**APPELLANT/DEFENDANT**

Cole Canyon Lockhart

**COUNSEL FOR APPELLANT**

Tracy D. Cluck
1450 West Highway 290, #855
Dripping Springs, TX 78620
tracy@tracyclucklawyer.com

**APPELLEE/STATE**

State of Texas, District Attorney's
Office of the 424th & 33rd
Judicial District

**COUNSEL FOR APPELLEE/STATE**

Wiley B. McAfee, D.A.
Gary Bunyard, Asst. D.A.
g.bunyard@co.llano.tx.us

**Trial Court:**

The Honorable Dan Mills
424th Judicial District Court Judge
Llano County, Texas
Jury Trial

The Honorable J. Allan Garrett
33rd Judicial District Judge
Llano County, Texas
Suppression Hearing

2

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND
COUNSEL...................................................................2

TABLE OF
CONTENTS.................................................................3

TABLE OF
AUTHORITIES............................................................5

ISSUES
PRESENTED...............................................................9

STATEMENT OF
FACTS......................................................................10

STATEMENT OF THE CASE...........................................13

SUMMARY OF THE
ARGUMENT..............................................................14

ARGUMENT................................................................17

    I.     The Trial Court Erred In Denying Appellant's Motion
           To Suppress Evidence.......................................17

           A.    Standard of Review...................................17

           B.    Argument..............................................18

    II.    The Trial Court Erred In Denying Appellant's Request
           for a Jury Instruction Under Art. 38.23 of the Texas
           Code of Criminal Procedure...............................27

           A.    Standard of Review...................................27

           B.    Argument..............................................28

III. The Evidence Admitted at Trial is Insufficient to
Sustain a Conviction for Unlawful Possession of
a Firearm by a Felon..................................................32

    A.    Standard of Review.................................32

    B.    Argument.................................................37

CONCLUSION AND PRAYER.............................................47

CERTIFICATE OF SERVICE..............................................48

CERTIFICATE OF WORD COUNT....................................48

4

# TABLE OF AUTHORITIES

**CASES**                                                       **Page**

*Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App. 1985)......28

*Atkison v. State,* 923 S.W.2d 21 (Tex.Crim.App. 1996).....28, 29

*Barrios v. State,* 283 S.W.3d 348 (Tex.Crim.App. 2009)........28

*Bates v. State,* 155 S.W.3d 212
        (Tex.App.—Dallas 2004, no pet.)..............33,34,39,42,44

*Brooks v. State,* 323 S.W.3d 893 (Tex.Crim.App. 2010)........35

*Brown v. State,* 911 S.W.2d 744 (Tex.Crim.App. 1995)..34,35,43

*Cantu v. State,* 944 S.W.2d 669
        (Tex.App.—Corpus Christi 1997, pet. ref'd)..............36

*Carvajal v. State,* 529 S.W.2d 517 (Tex.Crim.App. 1975).......36

*Copeland v. State,* 747 S.W.2d 14
        (Tex.App.—Houston [1st Dist.] 1988, no pet.)............41

*Cude v. State,* 716, S.W.2d 46 (Tex.Crim.App. 1986)...........34

*Dixon v. State,* 918 S.W.2d 678
        (Tex.App.—Beaumont 1996, no pet.)...........35,36,43,44

*Dubry v. State,* 382 S.W.2d 841
        (Tex.Crim.App [Panel Op.] 1979).........................37

*Evans v. State,* 202 S.W.3d 158 (Tex.Crim.App. 2006).....36,45

*Fagan v. State,* 362 S.W.3d 796
        (Tex.App.—Texarkana 2012, pet. ref'd).................33

*Florida v. Jardines,* ___U.S.___, 133 S.Ct. 1409 (2013)
        ...................................19,21,22,23,24,25,27,31

5

*Garcia v. State*, 790 S.W.2d 22
      (Tex.App.—San Antonio 1990, pet. dism'd)....39,45,46

*Gilbert v. State*, 874 S.W.2d 290
      (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).......36

*Grant v. State*, 989 S.W.2d 428
      (Tex.App.—Houston [14th Dist.] 1999, no pet.)..........37

*Guiton v. State*,742 S.W.2d 5 (Tex.Crim.App. 1987)..........40

*Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997)......17

*Hurtado v. State*, 881 S.W.2d 738
      (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd)........36

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781,
      61 L.Ed.2d 560 (1979)...............................32,34,35

*Jones v. State*, 963 S.W.2d 826
      (Tex.App.—Texarkana 1998, no pet.)...................36

*King v. State*, 895 S.W.2d 701 (Tex.Crim.App. 1995).........33

*Lassaint v. State*, 79 S.W.3d 736 (Tex.App.—Corpus
      Christi 2002, no pet.)................32,33,34,35,36,37,42

*Madden v. State*, 242 S.W.3d 504 (Tex.Crim.App. 2007).....28

*Martin v. State*, 753 S.W.2d 384 (Tex.Crim.App. 1988)......33

*Martinets v. State*, 884 S.W.2d 185
      (Tex.App.—Austin 1994, no pet.)....................34,35

*Menchaca v. State*, 901 S.W.2d 640
      (Tex.App.—El Paso 1995, pet. ref'd)...................34

*Mohmed v. State*, 977 S.W.2d 624
      (Tex.App.—Fort Worth 1998, pet. ref'd)...............36

*Moreno v. State*, 821 S.W.2d 344
(Tex.App.—Waco 1992, pet. ref'd)......................45

*Muniz v. State*, 851 S.W.2d 238 (Tex.Crim.App. 1993).......29

*Muzick v. State*, 862 S.W.2d 794
(Tex.App.—El Paso 1993, pet. ref'd)....................34

*Naquin v. State*, 607 S.W.2d 583 (Tex.Crim.App. 1980)......38

*Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App. 2005).........28

*Nguyen v. State*, 54 S.W.3d 49
(Tex.App.—Texarkana 2001, no pet.)...............33,42

*Oaks v. State*, 642 S.W.2d 174 (Tex.Crim.App. 1982)........42

*Ortiz v. State*, 930 S.W.2d 849
(Tex.App.—Tyler 1996, no pet.)..........................36

*Pitonyak v. State*, 253 S.W.3d 834
(Tex.App.—Austin 2008, pet. ref'd)..............23,26,27

*Poindexter v. State*, 153 S.W.3d 402 (Tex.Crim.App. 2005)..43

*Powell v. State*, 1D12-244, 1D12-1036
(Fla. CA 1, May 22, 2013)................................23

*Roberson v. State*, 80 S.W.3d 730
(Tex.App.—Houston [1ˢᵗ Dist.] 2002, pet. ref'd).......40

*Sandoval v. State*, 946 S.W.2d 472
(Tex.App.—Corpus Christi 1997, no pet.)...............34

*Smith v. State*, 176 S.W.3d 907
(Tex.App.—Dallas 2005, pet. ref'd)..................36,37

*State v. Derrow*, 981 S.W.2d 776
(Tex.App.—Houston [1ˢᵗ Dist.] 1998, pet. ref'd).......36

*State v. Robinson*, 334 S.W.3d 776 (Tex.Crim.App. 2011).....17

*Sutton v. State*, 328 S.W.3d 73
(Tex.App.—Fort Worth 2010, no pet.)....................34

*Taylor v. State*, 106 S.W.3d 827
(Tex.App.—Dallas 2003, no pet.)...........................36

*Tijerina v. State*, 334 S.W.3d 825
(Tex.App.—Amarillo 2011, pet. ref'd)................18,27

*Travis v. State*, 658 S.W.2d 502 (Tex.Crim.App. 1982)........33

*Villareal v. State*, 935 S.W.2d 134 (Tex.Crim.App. 1996).....17

*Valtierra* v. State, 310 S.W.3d 442 (Tex.Crim.App. 2010)....18

*Washington v. State*, 902 S.W.2d 649
(Tex.App.—Houston [14th Dist.] 1995, pet. ref'd)......36

*Watson v. State*, 752 S.W.2d 217
(Tes.App.—San Antonio 1988, pet. ref'd)............44,45

*Watson v. State*, 861 S.W.2d 410
(Tex.App.—Beaumont 1993, pet. ref'd)..................36

*Whitworth v. State*, 808 S.W.2d 566
(Tex.App.—Austin 1991, pet. ref'd)......................37

*Williams v. State*, 313 S.W.3d 393
(Tex.App.—Houston [1st Dist.] 2009, pet. ref'd)........36

*Wong Sun v. United States*, 371 U.S. 471 (1963)...............23

**CONSTITUTIONS**

U.S. Const. am. IV......................................14,18,27,31

U. S. Const. am. V......................................14,18,27,31

Tex. Const. art. 1, sec. 9...................................14,18,27,31

**STATUTES & RULES**

Tex. Pen. Code §12.42(a)............................................13

Tex. Pen. Code §30.05...................................25,26,30,31

Tex. Pen. Code §46.01(3)...........................................41

Tex. Pen. Code §46.04...........................................12, 13

Tex. Code Crim. Pro. art. 38.23...............14,15,18,27,28,31,32

Tex. Health & Safety Code §481.115(b)..........................13

Tex. R. App. P. 44.2(a)............................................27

## ISSUES PRESENTED

1. Whether the trial court erred by denying Appellant's motion to suppress evidence.

2. Whether the trial court erred by denying Appellant's request for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure.

3. Whether the evidence adduced at trial was sufficient to sustain a conviction for Unlawful Possession of a Firearm by a Felon.

9

TO THE HONORABLE COURT OF APPEALS:

Appellant Cole Canyon Lockhart respectfully submits this his brief in support of his appeal from the jury's verdict of guilt. The parties will be referred to by name or by their designation in the appeals court.

The Clerk's Record will be cited by page number as "Tr.____ [page #]." The Court Reporter's Record will be cited by volume and page number as "R—Vol. ___[volume #], pg.____[page number], and where necessary, [#] _____[line number].

## STATEMENT OF THE FACTS

In the case at bar, Deputy Sheriff Brad Evans obtained an unverified tip that Appellant was cooking methamphetamine at a cabin located in Long's Fishing Camp on a private road at Buchanan Dam, Texas. R. Vol. 6, p. 12-13, 17-19. The entrance to the fishing camp has a conspicuously posted "No Trespassing" sign. R. Vol. 6, p. 75. Dep. Evans phoned Sheriff Blackburn to discuss the tip. R. Vol. 6, p. 12-13. The two law enforcement officers decided to travel to the cabin in an effort to "prove the information to be true or false." *Id.* Before arriving at the cabin, Dep. Evans contacted Llano County Narcotics Investigator Mark Burke and Llano County K-9 Officer John Gillespie to meet the pair at the cabin with a drug-sniffing dog because

10

he "felt there would be a need for a search warrant." *Id.* The pair then went to the cabin and knocked on the door but received no answer. *Id.* Instead of leaving, Sheriff Black burn contacted Appellant by phone and asked him to meet the officers at the cabin. *Id.* When Appellant arrived he was asked for consent to search the cabin and he "immediately" refused consent. *Id.* A drug-sniffing dog was circled around the cabin searching the perimeter and porch. *Id.* The dog alerted on the front door of the cabin. *Id.* Despite several officers asking Appellant for consent to search he was "angry and refused to allow consent." R. Vol. 6, p.15.

At that point Deputy Burke made the decision to obtain a search warrant and then began walking around the cabin. R. Vol. 3, p. 79-80. Deputy Burke testified that could smell an ammonia odor, which he associated with drug activity, from the road but could not tell where the odor was coming from. R. Vol. 3, p. 77. As he walked around the cabin, Deputy Burke noticed a green barrel with a lid that he believed to be a trash-can immediately next to and within 10 feet of the front door of the cabin. R. Vol. 3, p. 82. Without a warrant or consent, Deputy Burke then opened the barrel and rummaged through the contents finding an opaque Chicken Express bag that he opened and rummaged as well. R. Vol. 3, p. 83. Inside the bag he found several

11

items he associated with drug cooking. *Id.* Dep. Burke then ran a criminal history check of Appellant. Based on "all of the . . . information," a search warrant was obtained and a search of the cabin was made resulting in the seizure of the alleged contraband which forms the basis of the conviction in this cause. R. Vol. 3, p. 84; R. Vol. 6, p. 7-11; Tr. 136-37.

Appellant was indicted for Possession of a Firearm by a Felon, enhanced[1]. Tex. Pen. Code §46.04; Tr. 6-7. The state offered evidence, which was admitted by stipulation, of prior felony convictions by Appellant. R. Vol. 6, 43-74; Tr. 126. This evidence supports the enhancement paragraph of the indictment. Tr. 6-7. Appellant did not testify at either phase of trial.

Appellant filed a motion to suppress evidence. Tr. 34-36, 48-60, 61-66. After a brief hearing and stipulated facts, the motion to suppress was denied by the trial court. R. Vol. 2; R. Vol. 6, p. 4-19; Tr. 67. Appellant requested findings of fact and conclusions of law. Tr. 72. Subsequently, the trial court entered findings of fact and conclusions of law. Tr. 82-87.

---

[1] Appellant was also charged, in a separate indictment, with Possession of a Controlled Substance, Penalty Group 1, Less Than 1 Gram, arising from the same facts as this case.

12

Appellant was convicted by a jury on all counts alleged in the indictment and this appeal follows. R. Vol. 4, p. 59-60; Tr. p. 124, 133, 136-37, 140.

## STATEMENT OF THE CASE

Appellant was charged, by indictment, with one count of Unlawful Possession of a Firearm by a Felon. Tr. 6.; Tex. Pen. Code §46.04. The indictment included an enhancement paragraph alleging that Appellant had been previously convicted of a felony offense thereby enhancing the punishment for this offense to that of a second-degree felony. Tr. 6; Tex. Pen. Code §12.42(a). Appellant was also charged as part of the same criminal episode, in a separate indictment, with one count of Possession of a Controlled Substance, Penalty Group 1, Less than 1 gram. Tex. Health & Safety Code §481.115(b). That charge was prosecuted in the same trial and is the subject of a separate appeal (*Cole Canyon Lockhart v. The State of Texas*, Cause No. 13-13-00608-CR, In The Thirteenth Court of Appeals—Corpus Christi/Edinburg).

After a jury trial, Appellant was convicted with the jury assessing the following punishment: 10 years and 1 day confinement in the Institutional

13

Division of the Texas Department of Criminal Justice and a fine of $10,000. Tr. 124, 133. A judgment of guilt was entered by the court consistent with the jury's punishment verdict. Tr. 136. This appeal follows. Tr. 140.

## SUMMARY OF THE ARGUMENT

Appellant asserts three points of error. In his first point of error Appellant argues that the trial court erred by denying his motion to suppress evidence. Appellant contends that police unlawfully intruded into private property, posted with a with "No Trespassing" sign, without permission, consent, or a warrant and then gathered information and evidence which they used to obtain a search warrant to search a cabin located on the private property. As a result of the search with the tainted warrant, evidence of contraband was obtained which forms the basis of Appellant's conviction in this case. The evidence used against Appellant was thus obtained in violation of the laws of the United States and/or Texas constitutions and should have been suppressed by the trial court under the exclusionary rule and/or Article 38.23 of the Texas Code of Criminal Procedure. U.S. Const. am. IV, XIV; Tex. Const. art. 1, sec.9; Tex. Code. Crim. Pro. §38.23. Therefore, Appellant contends that the trial court erred by denying his motion to suppress evidence and that his conviction should be reversed.

14

In his second point of error, Appellant contends that the trial court erred by denying his request to include a 38.23 instruction in the jury charge. Tex. Code Crim. Pro. §38.23. The jury heard testimony from State's witnesses that the fishing camp and road leading to the cabin, where the contraband that forms the basis of Appellant's conviction was seized, was open to the public. Appellant refuted that testimony by cross-examination and by admitting evidence indicating that the road and property are private and entry without permission is forbidden. The evidence which forms the gravamen of the offense for which Appellant was convicted was derived directly as a result of the unlawful entry by police into this property. Therefore, there was conflicting evidence before the jury, affirmatively challenged by Appellant, regarding whether the fundamental evidence against Appellant was lawfully obtained by police. As such, the trial court should have included a 38.23 instruction in the jury charge. However, the trial court, over Appellant's objection and tender of a proposed 38.23 charge, refused to so instruct the jury. As a result of the trial court's error Appellant was harmed. Therefore, his conviction should be reversed.

In his third point of error, Appellant contends that there was insufficient evidence at trial of an affirmative link between Appellant and the contraband found in the cabin at Long's Fishing Camp he is convicted of possessing. Moreover, there was no evidence that the contraband is in fact a firearm as defined by statute. The contraband was not on Appellant's person, he was not found in the cabin, he was not found in, near or in sight of the contraband, the state offered no DNA or fingerprint evidence linking Appellant to the contraband, the evidence at trial showed that Appellant did not have sole or exclusive access to the cabin where the contraband was found, there was no evidence that Appellant possessed a key to the padlocked cabin where the contraband was found, and there were no items found on Appellant or in the cabin that linked Appellant to the contraband. Appellant denied that the contraband is his and none of his actions gave rise to an inference that he was aware of the contraband found in the cabin. The contraband was not offered or admitted into evidence at trial.

The State has failed to prove that Appellant exercised actual care, custody, management or control over the contraband found in the cabin. Moreover, the State has failed to prove that the item alleged to be a firearm is in fact a firearm as statutorily defined. Therefore, the evidence at trial is not

16

sufficient such that a rational trier of fact could find beyond a reasonable doubt that Appellant possessed a firearm. As such, the evidence was not sufficient to sustain a conviction in this case and Appellant's conviction should be reversed.

## ARGUMENT

I. **The trial court erred by denying Appellant's motion to suppress evidence.**

### A. Standard of Review

A trial court's denial of a motion to suppress evidence is reviewed under an abuse of discretion standard. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). Appellate courts afford great deference to the trial court's determination of facts supported in the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Mixed questions of law and fact are afforded similar deference. *Id.* However, issues that do not turn on the credibility or demeanor of witnesses are reviewed de novo. *Id.* The evidence is viewed in the light most favorable to the ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex.Crim.App. 2011). If the trial judge makes express findings of fact, as in this case, the appellate court, viewing the evidence in the light most favorable to the trial court's ruling, determines whether the

17

evidence supports the factual findings made below. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex.Crim.App. 2010); Tr. 82. An appellate court, in reviewing the harm from a trial court's erroneous denial of a motion to suppress, evaluates "the entire record in a neutral, impartial, and even-handed manner, not in the light most favorable to the prosecution" . . . and must reverse the conviction unless, beyond a reasonable doubt, the error did not contribute to the conviction. *Tijerina v. State*, 334 S.W.3d 825, 835 (Tex.App.—Amarillo 2011, pet. ref'd).

## B. Argument

The trial court erred in denying Appellant's motion to suppress because police entered private property, posted with a "No Trespassing" sign, rummaged through a closed container near the door of a cabin on that property, circled the cabin perimeter, porch and front door with a drug-sniffing dog, all without a warrant and without consent or permission, and then used this unlawfully obtained information to obtain a search warrant resulting in seizure of the contraband used to convict Appellant of the instant offense. U.S. Const. amend. IV, XIV; Tex. Const. art. 1, sec. 9; Tex. Code Crim. Pro. art. 38.23; R. Vol. 3, p. 76-77, 84; R. Vol. 6, p. 18, 75.

The United States Supreme Court has held that an intrusion onto the curtilage of a residence by police with the subjective intent to search the premises violates the Fourth Amendment to the United States Constitution. *Florida v. Jardines,* ___ U.S. ___, 133 S.Ct. 1409 (2013). When an officer enters a constitutionally protected area the "scope of . . . [his] license—express or implied—is limited not only to a particular area but also to a specific purpose." *Id.* at 1416. Central to this inquiry is the subjective intent of the officers when they step onto the curtilage of a residence. *Id.* at 1417. This subjective intent can be inferred from the behavior of the officers when they enter a constitutionally protected area. *See id.* In *Jardines,* police, acting on a tip, approached the door of a residence with a drug dog. *Jardines,* 133 S.Ct. at 1413. Police could smell marijuana at the door with their own noses and the drug dog alerted on the door as well. *Id.* at 1413, 1421. Police then used this information to obtain a warrant to search the residence and seized contraband which formed the basis of criminal charges against an occupant of the residence. *Id.* at 1413.

In the instant case Deputy Sheriff Brad Evans obtained an unverified tip that Appellant was cooking methamphetamine at a cabin located in Long's Fishing Camp on a private road Buchanan Dam, Texas. R. Vol. 6, p. 12-13.

Dep. Evans phoned Sheriff Blackburn to discuss the tip. *Id.* The two law enforcement officers decided to travel to the cabin in an effort to "prove the information to be true or false." *Id.* Before arriving at the cabin, Dep. Evans contacted Llano County Narcotics Investigator Mark Burke and Llano County K-9 Officer John Gillespie to meet the pair at the cabin with a drug-sniffing dog because he "felt there would be a need for a search warrant." *Id.* The pair then went to the cabin and knocked on the door but received no answer. *Id.* Instead of leaving, Sheriff Black burn contacted Appellant by phone and asked him to meet the officers at the cabin. *Id.* When Appellant arrived he was asked for consent to search the cabin and he "immediately" refused consent. *Id.* A drug-sniffing dog was circled around the cabin searching the perimeter and porch. *Id.* The dog alerted on the front door of the cabin. *Id.* Despite several officers asking Appellant for consent to search "he refused to allow consent." R. Vol. 6, p.15.

At that point, and after the drug-sniffing dog had circled the cabin and alerted on the front door, Deputy Burke made the decision to obtain a search warrant and began walking around the cabin. R. Vol. 3, p. 79-80. Deputy Burke testified that could smell an ammonia odor, which he associated with drug activity, from the road but could not tell where the odor was coming

20

from. R. Vol. 3, p. 77. As he walked around the cabin, Deputy Burke noticed a green barrel with a lid that he believed to be a trash-can immediately next to and within 10 feet of the front door of the cabin. R. Vol. 3, p. 82. Without a warrant or consent, after the drug-sniffing dog had been deployed around the perimeter of the cabin and its porch and had alerted on the front door of the cabin, after he had sought and was again refused consent to search by Appellant, and after he had made the decision to obtain a search warrant, Deputy Burke opened the barrel that was located within 10 feet of the cabin door, and rummaged through the contents. While rummaging the contents of the barrel, Deputy Burke found an opaque Chicken Express bag that he opened and rummaged as well. R. Vol. 3, p. 83. Inside the bag he found several items he associated with drug cooking. *Id.* Dep. Burke then ran a criminal history check of Appellant. Based on "all of the . . . information," a search warrant was obtained by Deputy Burke and a search of the cabin was made resulting in the seizure of the alleged contraband which forms the basis of the conviction in this cause. R. Vol. 3, p. 84; R. Vol. 6, p. 7-11.

In *Jardines*, the United States Supreme Court held that "[t]he investigation of *Jardines* home was a 'search' within the meaning of the Fourth Amendment." *Jardines* at 1418-19. The facts of the instant case are on point.

21

In *Jardines*, acting on an unverified tip, police went to his door and knocked in order to talk to him about the tip. *Id.* at 1413. Officers could smell what the believed to be marijuana coming from the home. Id. at 1413, 1421. *Jardines* fled the scene but was apprehended. Id. at 1413. Police brought a drug-sniffing dog to the door of the residence which alerted on the door. *Id.* Based on the information obtained in this investigation, police obtained a warrant and searched his home. *Id.* Based on the evidence obtained during the search of the home *Jardines* was charged with drug trafficking. *Id.*

In *Jardines* the Court found that "[t]he officers were gathering information in an area belonging to *Jardines* and immediately surrounding his house—in the curtilage of the house," which enjoys the same Fourth Amendment protection as the house itself. *Id.* at 1414. The curtilage is any area surrounding the home in which the "activity of home life" occurs. *Id.* at 1415. The officer's actions in entering the curtilage for the purpose of gathering information about drug activity violated the Fourth Amendment to the United States Constitution, applicable to the states via Fourteenth Amendment incorporation[2]. *Id.* at 1414. As a result all evidence obtained after the officers

---

[2] The government argued at the suppression hearing that since Defendant's home is a trailer on private property that it is not a home and has no curtilage. The argument is specious. "Our state and federal constitutions declare that homes—whether castles or cabins,

22

entered the curtilage of the home—when they crossed the curb to walk up to the door—must be suppressed as "fruit of the poisonous tree." *See Jardines*, 133 S.Ct. 1409 (2013); *see also Wong Sun v. United States*, 371 U.S. 471 (1963)[3]. The Court explicitly held that, just as in the case at bar, "[t]he government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1417-18. "[T]he officers learned what they learned only by physically intruding on *Jardines'* property . . . [and that] is enough to establish . . . [a violation of the Fourth Amendment]. *Id.* at 1417.

---

mansions or mobile homes—are protected spaces that require a warrant or other lawful basis to justify a governmental intrusion." *Powell v. State*, 1D12-244, 1D12-1036 (Fla. CA 1, May 22, 2013) (Florida case applying *Jardines* to suppression issues).

[3] The State argued at the suppression hearing that once they establish that a valid warrant is issued, the court may only inquire as to the sufficiency of the affidavit used to obtain the warrant and cannot inquire into matters that are not within the "four corners" of the affidavit. Therefore, the State argued, that any evidence obtained by a facially valid warrant is not subject to exclusion under the Fourth Amendment and matters which occurred prior to obtaining the warrant are not relevant.

It is a basic tenet of criminal jurisprudence that all evidence obtained as a result of a violation of the Fourth Amendment must be suppressed. This includes evidence obtained later by search warrant using that information. The government cannot justify an otherwise unlawful search based on the information obtained by that search. The mere fact that here, as in *Jardines*, the government later obtained a search warrant based on the information gathered by the unlawful intrusion into the constitutionally protected curtilage of Defendant's home does not nullify the constitutional injury or its remedy—suppression of the evidence. *See Wong Sun v. United States*, 371 U.S. 471, 484-85, 487-88 (1963)(evidence obtained by Fourth Amendment violation excluded as fruit of the poisonous tree); and, *Pitonyak v. State*, 253 S.W.3d 834, 848 (Tex.App.—Austin 2008, pet. ref'd)("[a] search warrant may not be procured lawfully by the use of unlawfully obtained information").

As Justice Scalia points out in *Jardines*, to claim that in these situations officers are merely gathering evidence in plain sight which is a lawful activity that falls within the scope of the license to approach the door of a home, talk to its occupants, and enter if invited is a "false generalization" since "no one is impliedly invited to enter . . . the home in order to" look for incriminating evidence. *Jardines* at 1416, n. 4. Based on the foregoing, the conviction should be reversed and all evidence obtained after the unlawful entry onto the curtilage of the cabin should be suppressed as fruit of the poisonous tree.

At the suppression hearing, the State argued that the officers were merely engaged in a "knock and talk" exercise. But here, as in *Jardines*, as Justice Scalia point out, "that is not what they did." *Jardines* at 1415, n. 1. Moreover, the State argued that the subjective intent of the officers is not relevant. However, that argument was explicitly rejected by a majority of the United States Supreme Court. *Id.* 1416-17. The State also argued that there was an independent basis for a search warrant without using information or evidence tainted by a violation of the Fourth Amendment under *Jardines*. However, an independent basis for obtaining a warrant will not nullify the constitutional injury. For it is not the sufficiency of the warrant that is complained of but rather the unlawful search itself. "The fact that equivalent

24

information could be obtained by other means does not make lawful the use of means that violate the Fourth Amendment." *Jardines*, 133 S.Ct. at 1419, n. 2. The State also argued that *Jardines* is a narrow case regarding the use of drug-sniffing dogs and is not relevant to searches of the curtilage of a residence. As Justice Scalia points out, *Jardines* is not a case about a dog. *Id.* at 1416, n. 3. Though it is clear from *Jardines* that taking a drug-sniffing dog to the door of a residence as part of a drug activity investigation without a warrant or consent is prohibited by the Fourth Amendment. *Id.* at 1417-18. To argue that *Jardines* is not a case about curtilage is without merit. *Florida v. Jardines*, 133 S.Ct. 1409 (2013) (entry onto **curtilage** by police violates Fourth Amendment).

Deputy Burke testified at trial that the road into Long's Fishing Camp, despite a "No Trespassing" sign being posted, was a public access road and area. R. Vol. 3, p. 79-80; R. Vol. 6, p. 75. However, the trespassing statute in Texas does not provide an exception for police nor does it provide an exception simply because of prior non-enforcement by the owner of the property. Tex. Pen. Code §30.05. Moreover, the statute explicitly applies to non-residential land, including recreational vehicle parks and agricultural land, such as the land at issue in this case, where a sign is posted that entry is

forbidden. *Id.*; R. Vol. 6, p. 75. In this case the private property where the cabin is located is clearly and unambiguously posted that trespassing is forbidden and permission must be obtained to lawfully enter. R. Vol. 6., p. 75. Deputy Burke testified that he was in fact aware of the "No Trespassing" sign on the property. R. Vol. 3, p. 76. To the extent that any implied license to enter the property without permission existed, to knock and talk or otherwise, that license was negated by the by the "No Trespassing" sign.

Deputy Burke also testified that he did not have permission or consent to enter the private property. R. Vol. 3, p. 76-77. Nor, did he have a warrant. Therefore, the private property where the cabin is located was unlawfully entered by police who, by virtue of that unlawful entry into the private property, obtained evidence which forms the gravamen of the offense for which Appellant was convicted. R. Vol. 3, p. 79-80. There being no sufficient basis to obtain the search warrant in this case absent the unlawful entry into the private property where Appellant and the cabin were located[4], and the evidence in this case having been obtained by virtue of the unlawful

---

[4] The only information in the affidavit used to obtain the search warrant that was not obtained from the unlawful entry into the private property where the cabin was located is the unverified tip from an informant. R. Vol. 6, p. 7-11; R. Vol. 3, p. 84-85. Appellant contends that this is not sufficient for the warrant to have been validly issued absent the unlawfully obtained information. *See Pitonyak v. State*, 253 S.W.3d 834, 848 (Tex.App.— Austin 2008, pet. ref'd). Deputy Burke, who obtained the search warrant in this case, conceded this point on cross-examination. R. Vol. 3, p. 78.

26

entry into private property by police, the trial court should have suppressed the evidence. *Jardines,* 133 S.Ct. 1409; *Pitonyak v. State,* 253 S.W.3d 834, 848 (Tex.App.—Austin 2008, pet. ref'd).; U. S. Const., am. IV, XIV; Tex. Const., art. 1, sec. 9; Texas Code Crim. Pro. §38.23; R. Vol. 3, p. 84-85.

Appellant's motion to suppress evidence should have been granted by the trial court and the failure to do so was error. The unlawfully obtained evidence, which was admitted at trial over the objections of Appellant, was most if not all of the evidence admitted against Appellant and it logically follows that it contributed substantially in the juror's deliberations in arriving at their verdict. R. Vol. 3, p. 34-35, 49, 50, 51, 62, 112, 113. Therefore, this court should reverse Appellant's conviction. *See Tijerena v. State,* 334 S.W.3d 825, 835 (Tex.App.—Amarillo 2011, pet. ref'd); Tex. R. App. Pro 44.2(a).

II. **The Trial Court Erred by Denying Appellant's Request for a Jury Instruction Under Art. 38.23 of the Texas Code of Criminal Procedure.**

A. **Standard of Review**

In reviewing a trial court's denial of a requested jury instruction, an appellate court must first determine whether the charge contains error.

27

*Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). If the charge does contain error, then the appellate court must determine if the appellant suffered harm. *Barrios*, 283 S.W.3d at 350; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). Reversal is required if the error "is calculated to injure the rights of the defendant," which has been interpreted to mean that there is "some harm." Almanza, 686 S.W.2d at 171. Harm from failure to include a 38.23 instruction in the jury charge is subject to *Almanza* analysis. *Atkison v. State*, 923 S.W.2d 21, 27 (Tex.Crim.App. 1996).

## B.  **Argument**

A trial court must give an article 38.23 jury instruction if the evidence raises a disputed fact issue about whether evidence was lawfully obtained. Tex. Code Crim. Pro. art. 38.23; *Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007). A defendant is entitled to the submission of a jury instruction under art. 38.23 if the evidence heard by the jury raises a fact issue, the evidence on the fact is affirmatively contested, and the contested factual issue is material to the lawfulness of the challenged conduct in obtaining evidence. *Id.* at 510. "The evidence which raises the issue [of whether the evidence was obtained illegally] may be either strong, weak,

28

contradicted, unimpeached, or unbelievable." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App. 1993). "[W]hen there are disputed issues of fact affecting the legality of [the seizure of evidence] . . . the question of exclusion may be tried to the jury . . . and the judge must include in his final charge an instruction that, if the jury 'believes, or has a reasonable doubt, that the evidence was obtained in violation of . . . any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the U.S., . . . then and in such even, the jury shall disregard any such evidence so obtained.'" *Atkinson v. State*, 923 S.W.2d at 23.

Deputy Burke testified at trial that the road into Long's Fishing Camp, despite a "No Trespassing" sign being posted, was a free access road and public area. R. Vol. 3, p. 79-80; R. Vol. 6, p. 75. He further testified that the road into the camp and in front of the cabin where the contraband was found is a public road. R. Vol. 3, p. 80. Appellant affirmatively contested this testimony by cross-examination and by offering and admitting a photograph of the entrance to Long's Fishing Camp showing a "No Trespassing" sign and another sign showing that Llano County maintenance ends at the entrance to the fishing camp indicating that the road is in fact a private road. R. Vol. 3, p 79-80, 81; R. Vol. 6, p. 75. Deputy Burke further testified that he was aware

29

of the "No Trespassing" sign but that he "routinely accesses that property." R. Vol. 3, p. 76, 80. Deputy Burke also testified that he did not stop in at the office and check in with the owner, and did not have permission or consent to enter the private property. R. Vol. 3, p. 76-77. Nor, did he have a warrant. R. Vol. 3, p. 77.

The trespassing statute in Texas does not provide an exception for police nor does it provide an exception simply because of prior non-enforcement by the owner of the property. Tex. Pen. Code §30.05. Moreover, the statute explicitly applies to non-residential land, including recreational vehicle parks and agricultural land, such as the land at issue in this case, where a sign is posted that entry is forbidden. *Id.*; R. Vol. 6, p. 75. In this case the private property where the cabin is located is clearly and unambiguously posted that trespassing is forbidden and permission must be obtained to lawfully enter or remain[5]. R. Vol. 6., p. 75. Deputy Burke testified that he was in fact aware of the "No Trespassing" sign on the property. R. Vol. 3, p. 76. To the extent that any implied license to enter the property without permission of the owner existed, to knock and talk or

_____

[5] The sign requires visitors to turn right and immediately check in at the fishing camp office. Deputy Burke instead turned left and went straight to the cabin without checking in or obtaining permission to be on the private property where the cabin is located. R. Vol. 3, p. 76-77; R. Vol. 6, p. 75.

30

otherwise, that license was negated by the by the "No Trespassing" sign. See *Jardines*, 133 S.Ct. 1409. Therefore, the entry of police into the private property where the cabin is located was unlawful under the laws and constitutions of Texas and the United States and should have been suppressed by the trial court or jury. Tex. Penal Code §30.05; Tex. Code. Crim. Pro. §38.23; U. S. Const. am. IV, XIV; Tex. Const. art. 1, sec. 9.

The evidence of contraband upon which Appellant's conviction relies, was obtained by police as a direct result of their entry into the private property where the cabin is located. The jury heard conflicting evidence from the State and Appellant as to whether the property, and road leading into the property, is public or private. Appellant affirmatively cross-examined and admitted evidence challenging the State's witness on this issue. This contested fact issue is material to the lawfulness of police conduct in obtaining the evidence that forms the gravamen of the offense for which the jury convicted Appellant. Appellant requested that the jury charge include a 38.23 instruction and submitted a proposed jury instruction on this issue, but the trial court denied Appellant's request for a 38.23 instruction in the jury charge. Tr. 115, 117-23; R. Vol. 5, p. 8-14. The trial court erred by refusing Appellant's

31

requested jury charge and failing to charge the jury on this issue[6]. If the charge had included a 38.23 instruction, and if the jury agreed with Appellant, then there would not have been any evidence of contraband considered by the jury and Appellant would have been acquitted. Therefore, Appellant was harmed by the trial court's refusal to include a 38.23 instruction in the jury charge. Appellant's conviction should therefore be reversed.

## III.    The Evidence Admitted at Trial is Insufficient to Sustain a Conviction for Unlawful Possession of a Firearm by a Felon.

### A. Standard of Review

In determining the legal sufficiency of the evidence, the appellate court must inquire as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lassaint v. State*, 79 S.W.3d 736 (Tex.App.—Corpus Christi 2002)(citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In evaluating the evidence of unauthorized possession of a firearm by a felon, appellate courts

---

[6] The court was stated that it was inclined to give a 38.23 instruction given the evidence at trial. However, after the court received a phone call at the bench from the elected district attorney, the court denied the instruction based on the State's argument. R. Vol. 5, p. 9-10, 13, 14.

apply the same rules adopted for possession of controlled substances cases. *Bates v. State*, 155 S.W.3d 212, 216 (Tex.App.—Dallas 2004, no pet.). In drug possession cases, the State must prove both that the defendant had actual custody, control and management over the drugs and that the defendant had knowledge that the drugs were in fact contraband. *Lassaint*, 79 S.W.3d at 736 (citing *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995)(citing *Martin v. State*, 753 S.W.2d 384, 387 (Tex.Crim.App. 1988)). Likewise, to support a conviction of unauthorized possession of a firearm, the State must prove that the accused exercised actual care, custody, control or management over the firearm. *See Bates*, 155 S.W.3d at 216; *Nguyen v. State*, 54 S.W.3d 49, 52-3 (Tex.App.—Texarkana 2001, no pet.)(partially overruled on other grounds by *Fagan v. State*, 362 S.W.3d 796 (Tex.App.—Texarkana 2012, pet. ref'd)).

"[T]he evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Lassaint*, 79 S.W.3d at 740 (citing *Travis v. State*, 658 S.W.2d 502, 503 (Tex.Crim.App. 1982). "When an accused is not in exclusive possession and control of the place where contraband is found, it cannot be

concluded he had knowledge or control over the contraband unless there are additional independent facts and circumstances that affirmatively link him to the contraband." *Lassaint*, 79 S.W.3d at 740 (citing *Brown v. State*, 911 S.W.2d 744, 748 (Tex.Crim.App. 1995); *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986); *Sandoval v. State*, 946 S.W.2d 472, 476 (Tex.App.— Corpus Christi 1997, no pet.)); *Bates*, 155 S.W.3d at 216-17; *See Sutton v. State*, 328 S.W.3d 73,76 (Tex.App.—Fort Worth 2010, no pet.)(affirmative links doctrine applicable to unauthorized possession of firearm cases).

When contraband is not found on the person of the accused, additional facts must link the accused citizen to the contraband. *Lassaint*, 79 S.W.3d at 740 (citing *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App.—El Paso 1995, pet. ref'd); *Musick v. State*, 862 S.W.2d 794, 804 (Tex.App.—El Paso 1993, pet. ref'd)). The affirmative links doctrine, the appropriate means of applying the *Jackson* rationality standard of review, holds that evidence, direct or circumstantial, must establish that the defendant's connection with the contraband is more than just fortuitous—he must have exercised actual care, control or custody of the contraband, must have been conscious of his connection with the contraband, and must have known what that the item was contraband. *Lassaint*, 79 S.W.3d at 740 (citing *Martinets v. State*, 884 S.W.2d

34

185, 188 (Tex.App.—Austin 1994, no pet.); *Brown v. State*, 911 S.W.2d 744 (Tex.Crim.App. 1995)); *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010)(*Jackson* standard controls in evaluating sufficiency of the evidence challenges). The "affirmative links must be sufficient that a rational trier of fact could find beyond a reasonable doubt that [the defendant] exercised actual custody, control or management over the contraband." *Lassaint*, 79 S.W.3d at 740 (citing *Dixon v. State*, 918 S.W.2d 678, 679 (Tex.App.—Beaumont 1996, no pet.)).

Courts have developed a non-exclusive list of factors to be considered in making the determination of whether the evidence is sufficient to affirmatively link an accused citizen with contraband. These factors may include whether the accused citizen was the owner or had exclusive possession of the premises where contraband was discovered, whether the contraband was within close proximity or view of the accused citizen when it was found, whether the accused citizen possessed other contraband when arrested, whether paraphernalia to use or associated with the contraband was found on the person of the defendant or in his view, conduct of the accused citizen indicating consciousness of guilt, whether the accused citizen attempted to flee authorities when the contraband was discovered, and

35

whether the accused citizen has any special connection to the contraband. *Lassaint*, 79 S.W.3d at 740, 41 (citing *Carvajal v. State*, 529 S.W.2d 517, 520 (Tex.Crim.App. 1975); *State v. Derrow*, 981 S.W.2d 776, 779 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd); *Mohmed v. State*, 977 S.W.2d 624, 627 (Tex.App.—Fort Worth 1998, pet. ref'd); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex.App.—Corpus Christi 1997, pet. ref'd); *Ortiz v. State*, 930 S.W.2d 849, 853 (Tex.App.—Tyler 1996, no pet.); *Dixon*, 918 S.W.2d at 681; *Washington v. State*, 902 S.W.2d 649, 652 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Watson v. State*, 861 S.W.2d 410, 414-15 (Tex.App.—Beaumont 1993, pet. ref'd)); *Smith v. State*, 176 S.W.3d 907, 916 (Tex.App.—Dallas 2005, pet. ref'd); *Williams v. State*, 313 S.W.3d 393, 397-98 (Tex.App.—Houston [1st Dist.] 2009, pet. ref'd); *Taylor v.State*, 106 S.W.3d 827, 831 (Tex.App.—Dallas 2003, no pet.); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex.Crim.App. 2006).

"The number of factors is not as important as the logical force the factors have in establishing the elements of the offense." *Lassaint*, 79 S.W.3d at 741 (citing *Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.—Texarkana 1998, no pet.); *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex.App.—

36

Houston [1st Dist.] 1994, pet. ref'd)); *see Smith*, 176 S.W.3d at 916. "[P]roof amounting to a strong suspicion or even a probability will not suffice." *Lassaint*, 79 S.W.3d at 741 (citing *Grant v. State*, 989 S.W.2d 428, 433 (Tex.App.—Houston [14th Dist.] 1999, no pet.)(citing *Dubry v. State*, 582 S.W.2d 841,844 (Tex.Crim.App [Panel Op.] 1979))). "[T]he question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case by case basis. *Lassaint*, 79 S.W.3d at 741 (citing *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.—Austin 1991, pet. ref'd)).

## B. Argument

In the case at bar, police found and seized what was alleged to be a .22 rifle on a bed inside a cabin at Long's Fishing Camp during a search of the cabin. R. Vol. 3, p. 69, 70, 86, 104. Appellant challenged the sufficiency of the evidence in the trial court by moving for a directed verdict, which was denied. R. Vol. 4, p. 6.

There was no fingerprint or DNA evidence at trial connecting Appellant to the contraband at issue in this case. R. Vol. 3—P. 10, 88, 90. There was no evidence at trial of any connection between the contraband discovered and

Appellant or any other particular source. R. Vol. 3—P. 94. Appellant was not found with any contraband, ammunition or paraphernalia on his person. Appellant was not found or seen in the cabin, within sight of or near the firearm, the contraband or paraphernalia found in the cabin[7]. R. Vol. 3—P. 99. There was not any evidence that Appellant was under the influence of alcohol or drugs. There was no evidence that Appellant possessed a large sum of cash when he was arrested and none was found in the cabin. There was no evidence that drugs were being cooked or sold from the cabin. R. Vol. 3, p. 93. Moreover, only a very small amount of a controlled substance was located hidden in the cabin. R. Vol. 3—P. 114.

There was in fact no evidence at trial that Appellant was observed with the .22 rifle that was found inside the cabin or that he had any knowledge that the firearm was in the cabin. *See Naquin v. State*, 607 S.W.2d 583 (Tex.Crim.App. 1980)(state failed to prove sufficient affirmative link to contraband where no direct evidence of actual possession by defendant and no evidence that defendant knew that the contraband was where it was found). If

---

[7] Deputy Burke testified that a named cooperating source told him that she had been involved with the purchase of contraband from Appellant at the cabin recently, but the state did not call the named cooperating source to testify about these facts. Moreover, Deputy Burke testified that he had no reason to believe that this person was reliable. Presumably the jury received this hearsay evidence not for the truth of the matter asserted, but instead to show probable cause. R. Vol. 3—P. 78.

38

the firearm is not found on the accused citizen's person or is not seen in the accused citizen's exclusive care, custody, control or management, the State must offer additional, independent facts and circumstances that link the defendant to the firearm. *Bates*, 155 S.W.3d at 216-17. Having failed to do that, the State has thus failed to establish the necessary affirmative link, by circumstantial or direct evidence, between Appellant and the contraband seized from the cabin to sustain a conviction in this case.

Although police testified that they believe that Appellant had access to the cabin, there was no specific evidence at trial that Appellant had exclusive access or that the cabin was in fact his residence. R. Vol. 3—P. 98. To the contrary, the testimony at trial showed that police believed that any number of people had access to the cabin including the general public. R. Vol. 3—P. 80, 95, 96, 97-98. Despite testimony that the cabin was padlocked and could not be entered without a key, there was no evidence at trial that Appellant possessed a key to the cabin. R. Vol. 3—P. 98; *See Garcia v. State*, 790 S.W.2d 22 (Tex.App.—San Antonio 1990, pet. dism'd)(no affirmative link where appellant did not have key to area where drugs found). No evidence was offered at trial that Appellant leased or used the cabin as a residence, such as lease agreements, utility bills, or pay stubs. Moreover, the state did not call

39

the owner of the cabin to testify regarding the status of the cabin and Appellant's access. *See Roberson v. State*, 80 S.W.2d 730 (Tex.App.—Houston [1st Dist.] 2002, pet. ref'd)(where accused citizen is not in exclusive possession of the place where contraband is discovered, additional independent facts and circumstances must link him to the contraband). In short, the State failed to prove at trial that Appellant had resided at or had sole or exclusive access to the cabin at the fishing camp.

In *Guiton v. State*, the Court of Criminal Appeals, affirming reversal by the Court of Appeals, held that the evidence was not sufficient to uphold a conviction for possession of heroine found in a motel room where the defendant was observed retrieving a key and preparing to enter the room which was registered in his name. 742 S.W.2d 5 (Tex.Crim.App. 1987). The Court of Appeals found, *inter alia*, that there was no evidence indicating to whom the room had been rented. *Id.* The court held that the state failed to prove that the defendant had sole access to the room. *Id.* "When the accused is not in exclusive possession of the place where the [contraband] is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* at 8. In the

instant case, just as in *Guiton*, the State has failed to prove that Appellant had sole access to the place where contraband was found and failed to prove, though independent facts and circumstances, that the firearm is affirmatively linked to Appellant.

There was no evidence at trial that Appellant had actual care, custody or control of the .22 rifle found at the cabin[8]. At best the state could argue that Appellant had access to the cabin and therefore the jury could infer that Appellant had knowledge that the contraband was in the cabin[9]. However, even assuming *arguendo* that the state established that Appellant was aware of the contraband in the cabin and knew what it was, which Appellant does not concede, the State must additionally "prove that the [firearm] was within his *actual* care, custody, or control." *Copeland v. State*, 747 S.W.2d 14, 15 (Tex.App.—Houston [1st Dist.] 1988, no pet.)(emphasis in original)(state established that defendant possessed the substance and knew what it was, but

---

[8] In fact the State did not introduce into evidence the item they allege to be a firearm or a photo of the firearm. Neither did the State introduce any expert testimony that the alleged contraband is in fact an operable firearm within the statutory definition nor when the rifle was manufactured (firearms manufactured before a certain date are not illegal to possess even if they are operable--an important fact since the rifle was described as being "old"). Tex. Pen. Code §46.01(3). Instead the State offered only a demonstrative exhibit which they claim is a diagram of a firearm similar to that seized from the cabin. Appellant does not concede that the alleged contraband is in fact a firearm within the statutory definition.

[9] Appellant does not concede this point.

failed to prove that the substance was within his actual custody, care or control); *see Bates*, 155 S.W.3d at 216; *Nguyen*, 54 S.W.3d at 52-3. The state offered no evidence at trial that the contraband seized from the cabin was in Appellant's actual care, custody or control. Therefore, the evidence at trial failed to establish the required affirmative link between Appellant and the contraband seized from the cabin sufficient to sustain a conviction in this case. *Id.*

The only physical evidence at trial that connected Appellant to the cabin was an eyeglass prescription found inside a closed duffle bag found in the cabin. R. Vol. 3—P. 63, 105. However, this item was not found near the .22 rifle. R. Vol.3, p. 58-59. Instead it was found in a duffle bag elsewhere in the cabin with no evidence to suggest when or why the duffle bag was placed into the cabin or how the prescription came to be in the bag. R. Vol. 3—P. 105. *See Laissant*, 79 S.W.3d 736 (even where defendant's fingerprints were found on bag full of cocaine, no affirmative link was established since it could not be ascertained when the prints on the bag were made). At best this evidence can only show that Appellant, or someone he knows, may have had access to the cabin at sometime in the past (or perhaps just the duffle bag). *See Id.* at 739 (citing *Oaks v. State*, 642 S.W.2d 174, 177 (Tex.Crim.App. 1982)(mere

presence of an accused citizen at a place where contraband is found is not sufficient to establish possession even if he knows of the contraband's existence)); *see also Dixon*, 918 S.W.2d 678 (even where some factors establish a link to the contraband this is not dispositive where outweighed by countervailing factors); and, *Poindexter v. State*, 153 S.W.3d 402 (Tex.Crim.App. 2005)(while independent affirmative link factors can be shown by circumstantial evidence, the factors must establish that the accused citizen's connection with the drug was more than just fortuitous).

There was no evidence admitted at trial connecting the .22 rifle, which was located on the bed at the front of the cabin, to the duffle bag located in the back of the cabin where Appellant's eye-glass prescription was found—in fact there was no other evidence found in the cabin connected to the .22 rifle or Appellant[10]. R. Vol. 3, p. 58-59. As presented, and in light of the strength, logical thrust and number of all of the countervailing factors, the presence of the eyeglass prescription fails to establish a sufficient affirmative link between Appellant and the contraband discovered in the cabin. *See Brown*, 911 S.W.2d at 746 (evidence of affirmative links must be of such strength that the evidence would support no inference other than the guilt of the accused

---

[10] The State argued in closing that there were bullets in the duffle bag. R. Vol.4, p. 50. However, no such evidence was admitted at trial. R. Vol. 4, p. 52-57.

citizen); *Dixon*, 918 S.W.2d at 681 (factors establishing an affirmative link to contraband were outweighed by countervailing factors).

In *Watson v. State*, the owner/operator of a tractor-trailer was stopped while transporting 600-700 pounds of cocaine in the trailer of his rig. 752 S.W.2d 217 (Tex.App.—San Antonio 1988, pet. ref'd). Finding that the evidence showed that the defendant was not the only person with access to the trailer, the court held that the state failed to prove an affirmative link between the owner/driver of the truck and trailer and the large quantity of cocaine found inside. *Id.* "[W]ithout some evidence excluding the reasonable hypothesis that appellant was unaware of the presence of the cocaine, the trier of fact could not conclude beyond a reasonable doubt that appellant knowingly possessed the cocaine." *Id.* at 222. In the case at bar, the evidence is far less compelling than in *Watson*. There is no evidence in the instant case that would exclude the reasonable hypothesis that Appellant was unaware of the contraband found in the cabin. Though the evidence need not be so strong as to exclude every possible reasonable hypothesis other than guilt, it must be sufficient that a rational trier of fact could find beyond a reasonable doubt that an accused citizen exercised *actual* care, custody control or management over the contraband. *Dixon*, 918 S.W.2d at 681 (emphasis added); *Bates*, 155

44

S.W.3d at 216. Therefore, the evidence at trial is not sufficient to establish the requisite affirmative link between Appellant and the contraband seized from the cabin sufficient to sustain a conviction. See *Watson*, 752 S.W.2d 217.

Appellant gave no incriminating statements, did not act suspiciously at the scene, and made no attempts to flee while the cabin was searched. In short, Appellant's actions do not give rise to the inference that he had any knowledge that there was contraband in the cabin (or even that he resided at the cabin for that matter). *See Evans*, 202 S.W.3d at 162, n.12; *Smith*, 176 S.W.3d at 916; *Taylor*, 106 S.W.3d at 831; *Moreno v. State*, 821 S.W.2d 344 (Tex.App.—Waco 1992, pet. ref'd)(no affirmative link to contraband where accused citizen did not make furtive gestures, attempt to escape, or make incriminating statements). Therefore, there is no evidence in this case that any act or omission by Appellant gives rise to an affirmative link to the contraband seized from the cabin.

In *Garcia*, a case with some similarities to the instant case, police received a tip that drugs would be transported in a particular car. 790 S.W.2d 22. The defendant was stopped at a planned roadblock, appearing nervous and sweaty

as the sole occupant of the vehicle. Police found a large amount of contraband hidden in the car. Despite this, the court found that the state failed to establish an affirmative link between the contraband and the defendant since, among other reasons, the contraband was not found on the person of the defendant, the defendant did not make incriminating statements, and the defendant did not have a key to the trunk where the contraband was found. *Id.* at 22. As in *Garcia*, Appellant in the case at bar did not have any firearms or other weapons on his person, Appellant did not make any incriminating statements, and Appellant did not have a key to the cabin where the contraband was found. Just as in the *Garcia* case, in the instant case the State has failed to establish an affirmative link between Appellant and the contraband he is alleged to have possessed. *Id.*

The State has failed to prove an affirmative link between the contraband seized from the fishing camp cabin and Appellant by independent facts and circumstances. The State has failed to prove that Appellant had sole or exclusive access to the cabin in which the contraband was found. The State failed to prove that Appellant resided in the cabin. The State has failed to prove that Appellant has any connection to the contraband found in the cabin. The State has failed to prove that Appellant had any knowledge of the

46

existence of the contraband which was found in the cabin. The State has failed to prove that Appellant exercised actual care, custody, management or control over the old .22 rifle found in the cabin. Moreover, the State has failed to prove that the item alleged to be a firearm is in fact a firearm as statutorily defined. Therefore, the evidence at trial is not sufficient such that a rational trier of fact could find beyond a reasonable doubt that Appellant possessed a firearm. As such, the evidence was not sufficient to sustain a conviction in this case and Appellant's conviction should be reversed.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant, Cole Canyon Lockhart, respectfully prays that this Court reverse the jury's verdict. Appellant further prays that the Court grant such other and further relief to which Appellant is justly entitled.

Respectfully submitted,

/s/ Tracy D. Cluck

TRACY D. CLUCK
Texas Bar No. 00787254
1450 West Highway 290, #855
Dripping Springs, TX 78620
Telephone: 512-264-9997
E-Fax: 509-355-1867

47

tracy@tracyclucklawyer.com

ATTORNEY FOR APPELLANT
COLE CANYON LOCKHART

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Brief of Appellant, Cole Canyon Lockhart, has been served on the attorney listed below by fax to 325-247-5274, on July 13, 2014:

424th & 33rd District Attorney's Office
Mr. Wiley B. McAfee, Dist. Atty.
Mr. Gary Bunyard, Asst. Dist. Atty.

/s/ Tracy D. Cluck

_____

TRACY D. CLUCK


## CERTIFICATE OF WORD COUNT

I certify that the pertinent portion of the brief for the Appellant, Cole Canyon Lockhart, is comprised of approximately 9283 words.

/s/ Tracy D. Cluck

_____

TRACY D. CLUCK